UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DENNIS J. LAWRENCE,

                Plaintiff,

        -vs-                                                                         04-CV-025C

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.

---

APPEARANCES:    ERIE COUNTY DEPARTMENT OF SOCIAL SERVICES (CHARLES J. SCIBETTA, SR., ESQ., of Counsel), Buffalo, New York, for Plaintiff.

                        KATHLEEN M. MEHLTRETTER, ESQ., ACTING UNITED STATES ATTORNEY (JANE B. WOLFE, ESQ., Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

Plaintiff Dennis Lawrence initiated this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") benefits. The Commissioner has filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

**BACKGROUND**

Plaintiff was born on June 6, 1976 (T. 79).[1] He applied for SSI benefits on July 16,

---

[1] References preceded by "T." are to page numbers of the transcript of the administrative record filed by defendant as part of the answer to the complaint (Item 8).

1998, alleging disability based on HIV infection and depressive disorder (T. 79). Plaintiff's application was denied initially and upon reconsideration (T. 81-94). Plaintiff requested an administrative hearing, which was held on May 5, 1999 and March 11, 2002 before Administrative Law Judge ("ALJ") Timothy M. McGuan (T. 24-77).[2] On August 28, 2002, the ALJ determined that plaintiff was not disabled and not entitled to SSI benefits (T. 15-21). The ALJ's decision became the Commissioner's final determination on November 7, 2003, when the Appeals Council declined plaintiff's request for review (T. 8-10). On January 12, 2004, plaintiff instituted this action seeking judicial review of the Commissioner's final determination (Item 1). An amended complaint was filed on January 16, 2004 (Item 4). The Commissioner filed an answer on April 16, 2004 (Item 8), and moved for judgment on the pleadings on July 14, 2004 (Item 11). Plaintiff responded to the motion by letter brief on September 23, 2004 (Item 13). Oral argument was heard on December 14, 2005. For the reasons that follow, the Commissioner's motion is granted.

## DISCUSSION

**I.    Scope of Judicial Review.**

Under the Social Security Act, a person is entitled to Supplemental Security Income benefits when he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

---

[2] Following the administrative hearing in May 1999, the ALJ issued a decision denying benefits. Plaintiff sought review of the decision from the Appeals Council, which ordered a remand for further proceedings (T. 116-118).

less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Such a "physical or mental impairment" is an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).  Additionally, an individual will be determined to be disabled only if his physical or mental impairments are of such severity "that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Act states that upon district court review of the Commissioner's decision, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938); *see also Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson v. Perales,* 402 U.S. at 401.  The court's "inquiry is 'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Winkelsas v. Apfel,* 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker,* 694 F.2d 639, 642 (2d Cir. 1982)).

However, "[b]efore the insulation of the substantial evidence test comes into play,

it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Gartmann v. Sec'y of Health and Human Servs.,* 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada v. Apfel,* 167 F.3d at 773.

**II.     Standards for Determining Eligibility for Disability Benefits**

The regulations set forth a five-step process for the ALJ to follow in evaluating disability claims. *See* 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §416.920(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. 20 C.F.R. § 416.920(d). If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(f)(1).

The claimant bears the burden of proof with respect to the first four steps of the

analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir. 2000); *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had been employed following the alleged onset of disability, and was employed at the time of the decision (T. 16). Plaintiff alleged that he was disabled only for the period July 16, 1998 through July 31, 1999 (T. 16). In reviewing plaintiff's medical records, the ALJ found that plaintiff suffers from medically determinable conditions, that those impairments are "severe" for purposes of the regulations, but that plaintiff's impairments, individually or in combination, did not meet or equal the requirements of the Listings (T. 16). The ALJ further found that plaintiff's impairments did not prevent him from working during the relevant period, and that plaintiff has only a "slight limitation in his ability to perform activities of daily living and only a slight limitation in his ability to maintain social functioning" (T. 16-17, 18). Proceeding to the fourth step of the sequential evaluation process, based on the medical record and plaintiff's subjective complaints, the ALJ found that plaintiff has the RFC to perform work at all exertional levels (T. 18). Specifically, the ALJ found that given plaintiff's slight limitations in memory, judgment, and appropriate response, he could perform heavy work with the following non-exertional limitations: avoid concentration to dust, humidity, and fumes; moderate limitation in public interaction; moderate limitation in the ability to handle complex tasks; and moderate limitation in ability to handle stress and deadlines (T. 19). Based on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff could not perform his past relevant work as an activities aide or dietary helper in a nursing home, but

could perform other work in the economy, such as office helper, addresser, and cutter/paster (T. 19-20). Accordingly, the ALJ concluded that plaintiff was not disabled for purposes of the Social Security Act at any time during the period at issue (T. 20).

The Commissioner contends that the ALJ's findings are supported by substantial evidence. Plaintiff contends that the ALJ misapplied the established legal and regulatory standards in substituting his opinion for the medical opinion of the consultative psychologist, Thomas Dickinson, Ph.D.

### III. The Medical Evidence

Plaintiff is HIV positive, but is minimally symptomatic. He is treated by Dr. Ross Hewitt, who reported that plaintiff has no limitations for lifting/carrying, standing/walking, and sitting (T. 360-64). Dr. Hewitt also reported that plaintiff feels depressed and unmotivated (T. 361).

On May 24, 1999, plaintiff underwent a psychiatric consultative examination by Thomas Dickinson, Ph.D. Dr. Dickinson observed plaintiff to be alert and pleasant, although moderately insecure and of low-average intelligence (T. 353). He concluded that plaintiff suffered from major depressive disorder without psychosis related to his upset and frustration regarding his HIV infection (*id.*). Dr. Dickinson would "doubt that [plaintiff] could handle complex directions, detailed tasks, flexible and distracting situations, typical work pressures and time demands at this point." (T. 354).

On January 4, 2002, plaintiff again saw Dr. Dickinson. Plaintiff complained of fatigue, poor sleep, poor concentration, depression, and social withdrawal (T. 368). Dr. Dickinson observed moderate depression, a fair level of orientation, moderate limitation

in social skills, and mildly limited general daily judgment (T. 370). The diagnosis was chronic and continuing major depressive disorder (T. 371). Dr. Dickinson opined that plaintiff "would have troubles with time pressures, work decisions, quick memory assignments, handling complex directions, handling flexible and distracting situations, applying himself in diligent consistent manner . . . ." (T. 371). Dr. Dickinson stated that "[t]here seems little prospect of vocational rehabilitation at this point" (*id.*).

In a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" dated January 11, 2002, Dr. Dickinson opined that plaintiff showed "slight" restrictions for the following work-related activities: understand and remember short simple instructions, carry out short simple instructions, make judgments on simple work-related decisions, and respond appropriately to changes in a routine work setting (T. 373-74). "Slight" restriction is defined as "some mild limitation in this area, but the individual can generally function well" (T. 373). Dr. Dickinson noted "moderate" restriction in plaintiff's ability to understand and remember detailed instructions, carry out detailed instructions, interact appropriately with the public, supervisors, and co-workers, and respond appropriately to work pressures in a usual work setting (T. 373-74). "Moderate" restriction is defined as "moderate limitation in this area but the individual is still able to function satisfactorily." (T. 373).

## VI.    Vocational Evidence

Peter Manzi, a vocational expert ("VE"), testified that a person of plaintiff's age and education with no exertional limitations, but moderate limitations in his ability to interact with the public, handle complex tasks and distracting situations, and handle work pressures and time demands, would be able to perform unskilled labor (T. 71). The VE stated that

such an individual could work as an office helper, an addresser, or a cutter and paster of press clippings (T. 72-73).

### VII.   The ALJ's Decision

Plaintiff contends that the ALJ erred in substituting his own opinion for that of Dr. Dickinson.  Plaintiff argues that the ALJ rejected Dr. Dickinson's report, and that there is no other evidence of plaintiff's mental abilities upon which to base a finding of no disability. Plaintiff relies on the previous remand from the Appeals Council, in which the Council found that the ALJ, in rejecting the Dr. Dickinson's first report, did not identify other medical evidence that contradicted the consultant's opinion and supported the ALJ's decision (T. 116).  Plaintiff contends that the ALJ made the same error after the remand.

At the direction of the Appeals Council, plaintiff underwent a second consultative examination by Dr. Dickinson.  At that time, Dr. Dickinson found moderate depression and moderate limitations in plaintiff's ability to understand, remember, and carry out instructions, interact with the public, and respond appropriately (T. 370-74).  Dr. Dickinson also stated that the results of testing in 2002 were "consistent" with his previous evaluation of plaintiff (T. 372).  Dr. Dickinson stated in his 2002 report that "[t]here seems little prospect of vocational rehabilitation at this point" (T. 371), but this conclusion contradicts Dr. Dickinson's mental RFC assessment (T. 373-74), in which he found only slight to moderate limitations and which would indicate plaintiff's ability to "function satisfactorily" in the workplace (T. 373).

While the ALJ rejected Dr. Dickinson's conclusion regarding plaintiff's dim prospects

for vocational rehabilitation, the ALJ relied on Dr. Dickinson's assessment of plaintiff's mental ability to do work-related activities. The conclusion that plaintiff could not undergo vocational rehabilitation is inconsistent with the findings in Dr. Dickinson's report and with the detailed mental RFC assessment. The ALJ properly weighed all the medical evidence, and determined that plaintiff was not disabled. *See* 20 C.F.R. § 416.927(c)(2). Moreover, the determination of disability is an issue reserved to the Commissioner, and a statement by a medical source that a claimant is "disabled" or "unable to work" is not a medical opinion. *See* 20 C.F.R. § 416.927(e)(1).

Dr. Dickinson's findings of "moderate" limitations in the mental RFC assessment, combined with Dr. Hewitt's assessment that plaintiff was not physically limited in his ability to work, aside from certain environmental limitations such as dust and chemicals, foreclose a determination of total disability. Consistent with the medical evidence, the ALJ concluded that plaintiff was able, during the relevant time period, to perform low-stress, unskilled work of any exertional level. Accordingly, the Commissioner's decision is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 11) is granted. The Clerk of the Court is directed to enter judgment in favor of the defendant.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: January  10  , 2006
p:\opinions\04-25.dec1905